Good morning, may it please the Court. I'm Richard Salgado, here representing Indian Harbor Insurance Company in this appeal. And I want to start here just with the language at issue, which is in the gray insurance policy, which provides that we will pay those sums the insurer becomes legally obligated to pay as damages. And then that follows in the policy shortly thereafter our right and duty to defend in when we have used up the applicable limit of insurance in the payment of judgments or settlements. That's the whole question, though. I mean, the question is whether this is a settlement once we get past the choice of law matter. But if Texas law applies, the question is, what is the definition of settlements under Texas law? That was my next line, Your Honor. That was exactly it. And so here I would submit the controlling case here. Well, first I'll say what happened was, again, there was two payments that were made by gray insurance. One was a $50,000 payment that was made on behalf of Rutherford Oil, and that was for a settlement. That was, it's in the record, very plainly that was a settlement. It ended the dispute against Rutherford Oil. And then $950,000 in exchange for a covenant not to execute against Agreco. So the controlling case here I would submit is Continental Cavalry Company, which is exactly the same provision that we're dealing with right here. The exact same right and duty to defend ends when you've used up in a payment of a judgment or a settlement. That's the case of controls here. And there the court held the agreement did not satisfy that provision because there was no settlement as intended by the policy because no lawsuit or dispute was ended. Counsel, is Agreco legally obligated to pay anything at that point as a result of the covenant? No. Okay. So that – but that's the language in the policy. And what about the – when we talk about the duty to defend – and I want to get back to the choice of law issue eventually. But when we talk about the duty to defend, the Indian Harbor policy has the same provision. Is that correct? Same obligation. It does. When would that kick in if Gray discharges its obligation to pay whatever the policy limits? I mean we have a very serious injury here. We agree that it's probably over a million-dollar exposure here. So Gray discharges its coverage in this case. When would the duty to defend under the Indian Harbor policy ever be triggered if it's Gray's duty after it pays its policy limit? Well, if it's paid its policy limits in the form of a settlement or a judgment, then it's discharged. At that point, it rolls over, and the duty to defend would fall upon Indian Harbor. But the argument here is that while they paid their policy limits, they did not do so as part of a settlement. There's no question there's no judgment. So the question is was that as part of a settlement. And our argument here is that it was not part of a settlement. And the reason – Explain to me how, other than in this circumstance, they can settle it with the original plaintiff without releasing your client as well. Well, for example, there's multiple claims oftentimes. And if they were to settle one claim, if you have multiple plaintiffs, you can settle on behalf as to one or more of the plaintiffs but not all the plaintiffs. Wouldn't the duty to defend – under your argument, the duty to defend would continue on as to all plaintiffs? Oh, no, absolutely not. In that case, Your Honor, there's a settlement. If a dispute has ended, if there is a dispute that has ended, that's a settlement. If that payment – it does not have to resolve every dispute there is. If there's ten disputes and they only resolve one of the ten disputes, one of the ten claims, that's fine. That right there would still be a settlement because at least some part of that case is now gone. I think with the – What's the reason? I mean just practically speaking, what's really going on here? Why didn't they do it that way with a release? Well, because they could not obtain a release for a million dollars. As the courts pointed out, this was a very serious claim. There was more issue than that. A million dollars wasn't going to settle it. The problem is what they essentially did was they wrote a check and they got out of a big chunk of their obligations, which was to defend. Yeah, the payment of the settlement is only one part of that deal. The other part is the defense part. And what they essentially did was they found a way – I mean there's plenty of law in the books that they couldn't say we're going to pay it into the registry or we're going to do this or that to just discharge it. They came up with a creative solution here to say instead we're going to obtain a covenant not to execute – same effect, we're now out. At that point, though, the defendant, Greco, no longer really has the motivation, candidly, to keep fighting it, which is one of the reasons in Gandhi the Texas Supreme Court shot – and there's different issues in Gandhi. I don't want to say this is perfectly analogous to Gandhi because it's not. But in that case, they said essentially the defendant no longer has a reason to defend it. They're protected by a covenant not to execute. Well, right here they've essentially done the same thing. They've said, okay, we're out now. We're saving a whole bunch of money. Somebody still has to defend it. There's still going to be a defense. The claims are still alive. We still have a case here in which the – So the litigation goes on. Exactly. The litigation goes on, and somebody has to pick the tab up for the defense cost, and guess what? We're out of it now because we're clever enough. We just got out. And that's the fundamental problem here. I want to point out there's some language I think is really helpful here in the continental case, which again – But they couldn't settle the case with the plaintiff because if they – I mean the plaintiff couldn't settle the case with the defendant because if they settled the case, they would be out with respect to the excess insurance coverage. That's it. That's what they were saving, and that's why there was no settlement. Exactly. And instead what – It's exactly what Judge Engelhardt was saying, though, but that effectively means that the primary insurer will continue to defend the insurer at the expense and the excess coverage gets out of defending the case. Well, the excess – In every case. Well, not necessarily, Your Honor. For example, in this case – Virtually every case. A lot of cases have multiple claims. For example, let's say you have five claims. You have a claim for tortious – I'm just making up claims here, but you have three different tort claims. Well, they'd be out of the case with respect to the person who settled the case. I mean the guy who – the plaintiff who settles with the defendant, I guess, says I'm settling all the claims that you're suing me for. You're saying that some – I'm not settling that one, but I'm settling this one. I don't know what you're saying. Well, maybe I can explain, Your Honor. For example, let's say there's four claims that are brought. You have four different tort claims, whatever kind of tort claims you want them to be. There's no – Wait a minute. Different kind of tort claims? Or different – any four claims. I'm just trying to give just the abstract. I'm afraid you're getting in trouble. You don't just have one claim. The point I'm trying to get at here, Your Honor, is simply that there's many ways in which you can settle part of a case. There might be multiple plaintiffs sometimes. There might be multiple claims sometimes. But generally speaking, what we're doing here is shifting the defense costs to the primary carrier. If we say this litigation – I mean if we say – if we say that the litigation continues. Well, Your Honor, there's no – to answer that question, I don't think there's any easy answer because in the alternative, you're shifting it to the excess carrier. Because what's going to happen then is the moment any primary carrier comes into this, they're immediately going to go ahead, pay their million dollars or whatever the money is, and then immediately the defense cost is going to automatically fall to the excess carrier. So that's where we go back to the terms here. And essentially the point is something has to go away. It doesn't have to be the whole case. Some actual claim or dispute has to be resolved. Why isn't that an obligation that is owed by the jury in this instance? Why isn't that an obligation that is owed to the insured? Because, again, the policy puts the primary on the hook to make certain the obligation is – terminates or at least the argument is that it terminates when the insured – if the insured is legally obligated to pay as damages. And in this case, Gray has secured for its insured an obligation. The plaintiff cannot cause a greco to be legally obligated to pay. It's excess. Basically the spotlight is now on the excess carrier, which is why a lot of people – I assume most people buy excess coverage. They don't want to pay, and they don't want to pay – to the full extent of that policy, and if it's a million, then by golly, we want a million. And then on top of that, we want our excess to cover the full limit of that policy as well. Isn't that correct? It is, Your Honor, but they still have to defend the case. And that's it. The problem we have here is the primary carrier shirking off that responsibility, that obligation to actually defend. They're getting off immediately as cheaply as they possibly can. They're paying the policy. They're exhausting the policy. Up to that, but without somebody – the defense cost has to go somewhere. Somebody is still going to short that defense. It has to go somewhere, but, I mean, once they pay the policy limit, it seems to me the excess includes a duty to defend as well. When would that obligation kick in? You mentioned – I mean I don't see – I mean we've all been doing this a while, but very few cases, and maybe I'm repeating what Judge Jolly just said, but would they settle like a punitive damage claim and then that would be good enough? That would do it, yeah. Would they settle a unseaworthiness claim or something and then that would be good enough even though there's more to the personal injury suit? Correct, Your Honor. Literally anything, some actual claim has to be resolved. That's what you say. That's your interpretation. If I may, Your Honor, if I may go to Continental, I just want to read here from that. Before you do, what is your best case for the proposition that you just put forward? Continental. In response to my question. Can you rephrase the question? What is the best case that I can find that the panel can look at that supports your assertion regarding settlement? Right, some type of settlement. Continental. That is Continental of Casualty and the 683F3rd79. That is absolutely the case here that I would argue controls, and I'm actually going to read to you here. This is from the magistrate decision or the district court decision that was actually affirmed in Continental. Before Encompass Power was a defendant in the underlying case and after, Encompass remained a defendant on all the claims originally asserted by Valero. And Valero continued to prosecute all the same claims against Encompass Power. And based on that, the district court, and then that was affirmed by this court, that because there was no settlement as intended by the policy because no lawsuit or dispute was ended. So going in before the agreement, you had X number of claims all against this defendant by this plaintiff. After the agreement, the exact same claims were still there. Same plaintiff still kept prosecuting them. That is exactly what we have here on all points. That is absolutely this case. How do you distinguish Judwin, which they say deals with the same exact type of agreement as this one? Absolutely. Judwin, Your Honor, never reached the issue of there not being a release. It just didn't reach it. It actually expressly – that case was – Because of the footnote that – Footnote four. Footnote four of Judwin. It was waived below, and the court did not reach that issue. They did not reach the release issue. And I'll also say Judwin, too, just an additional distinguishing fact, is Judwin and also Kings Park, which is the Texas Appellate Court case that is also cited along these lines right after Judwin. It followed Judwin essentially. Both of those flow from a really different era of these kinds of insurance contracts and agreements that were happening. They both came out of the same operative facts in the early 1990s, late 1980s, in which cases a lot of different assignments and so forth happening. Gandy, which came out of the Texas Supreme Court in 1996, I believe, absolutely upended those agreements. There's no question the agreements that happened in Judwin and Kings Park would not be allowed under Texas law today. None of this matters if Texas law doesn't apply, so you only have a little bit of time left. If you can make – My one minute here. Yes, Your Honor. And then I'll come back to that in rebuttal, of course, in a little bit, too. Again, here, 2142 of the Texas Insurance Code is operative here. And there's also, of course, a balancing test for the most significant relationship. I'm going to focus on 2142 because I think that gets the job done here. There's three prongs to that. The second prong is not disputed, so we're going to talk about the first prong and the third prong. You have to meet all three, right? All three. Second is not in dispute. First prong is a procedure payable to a citizen or inhabitant of Texas. Now, right there, the argument that's been made is that, well, the insurer here was a Louisiana resident. However, what happened here, Gray – I believe Gray would absolutely steadfast argue the payment they made to the Brennecks, who were Texas citizens, was made pursuant to the policy. If that payment was not made pursuant to the policy, then it absolutely would not satisfy any criteria to be a settlement or to discharge the deed. So they have to have that deed pursuant to the policy. So, therefore, they made that policy decision. They paid it directly to the Brennecks unilaterally without even involving a GRCCO. The money did not pass through a GRCCO. So I think I would submit that the first prong there is absolutely satisfying on that basis. It was payable to a Texas citizen. They made it payable to them. The third prong is satisfied, and essentially I have time to go on. Let me complete this one point. The third prong is the policy must be issued in course of the company's Texas business. And here what was happening was you have a company, Gray, that does business both in Louisiana and Texas, issuing a policy to Gishard, which was the actual policyholder here. It was this Gishard company that's in Louisiana. It's about an hour, hour and a half drive in between their Beaumont, Texas, and Louisiana. And so it's on the Louisiana side of things, but on their website, this is a company that does business in south Louisiana and east Texas. That is what they do. They're a drilling company that goes around doing it. And so they issued an insurance policy to a company that was doing business in both states. They themselves did business in both states. That's the accident and all the events here. You can cover more of it on rebuttal. Thank you, Your Honor. We'll now hear from a Gray Insurance Company, Mr. Schuchart. Hi, police and court, and good morning. My name is Fred Schuchart, and I represent the Appleby Cross Appellant, the Gray Insurance Company. The district court got it right with respect to Texas law. The court determined, based upon principles of stare decisis in the Jaguar and the Kings Park case, that the payment of policy limits in exchange for a covenant not to execute, in essence, constitutes a settlement under the policy language and therefore extinguishes the duty to defend. Assuming this court finds otherwise, the district court got it wrong with respect to the applicable law. Instead of applying Texas law, the court should have applied Louisiana law because it misapplied the factors under 2142 of the Texas Insurance Code and the restatement. Indian Harbor does not dispute, never has disputed, that if Louisiana law applies, Gray's payment constitutes an exhaustion of the policy limits and extinguishes the duty to defend. Accordingly, the Gray Insurance Company respectfully prose that this court uphold the judgment of the district court or, in the alternative, determine that Louisiana, not Texas law, applies, that the payment extinguish the policy limits and render judgment in favor of the Gray Insurance Company. So you invoke Louisiana law as an alternative. I understand why you do that, given the posture we're in. But shouldn't we, like the district court, first decide the choice of law? I mean, why should we be off deciding this Texas law issue that you all vigorously debate if Texas law doesn't even apply? Your Honor, I respectfully agree with that assessment. I think that the choice of law is a much more straightforward and easier issue, and it's not that you don't have to get as far into the woods or potentially as far into the woods as you do with respect to what Texas law is. Although, it's certainly our position Texas law is clear. But I think the choice of law issue, at least from a scholarly perspective, makes sense to be the first issue to be addressed, even though because of what the lower court did, we had to do it conditionally. And with respect to the choice of law, Article 2142 does not apply. Council, you know, Indian Harbor and Gray both agree that it's a three-prong test. We both agree that the second prong doesn't really apply. There's no dispute. Gray does business in Texas. So it's a question of whether it satisfied both prongs one and two. Prong number one is that the proceeds have to be payable to a citizen of the state of Texas or an inhabitant of the state of Texas. Curiously, Indian Harbor hasn't cited one case in this court that holds in the third-party context or liability policy that the focus is on the third-party beneficiary or the underlying plaintiff. There's a reason for that. It doesn't exist. All the cases in Texas which have directly addressed the issue, with the exception of one, have all concluded that with respect to applying 2142, the focus is on the inhabitancy or residency of the insured, even though some of the benefits are payable to an underlying plaintiff. In this case, there's absolutely no dispute that both Eshard, the named insured, and Agreco, the additional insured, are not residents of the state of Texas. And therefore, prong one, or factor one, is not satisfied. Even if this court were to look at and determine that, for some reason, creating a law that is the underlying plaintiff's residency that matters, the policy still has to be issued in connection with the insurance company's business in the state of Texas. It is that nexus that the trial court missed. Because the only evidence in this case with respect to the issuance of the policy is that the named insured, Eshard, was a Louisiana resident, that the policy was brokered by a Louisiana resident, and Gray is a Louisiana resident. There's absolutely no connection with the state of Texas with respect to the issuance of the policy of insurance. And that's the key to the third prong, was it issued in the course of the company's business in the state of Texas. And the rationale for all those decisions is really clear. 2142 can't have extra-territorial effect. And that's the way the courts have limited the effect of trying to apply Texas law to policies that were issued potentially outside the state of Texas to residents that aren't in the state of Texas. And, you know, Indian Harbor in their briefing seemed to imply that we're taking the position that no policy ever issued outside the state of Texas would ever be subject to Texas law. That's not correct. We acknowledge, like the PV case, that if a policy is issued to an out-of-state insurer that covers exclusively property in Texas, Texas law should apply to that situation. But that's not the situation we have here. So as a matter of— If the statute's out, what about— Right, the restatement. —the non-tax analysis? Correct. And it's a balancing task. Indian Harbor in their briefing does not dispute that the court correctly found that factors one and five favor Louisiana law. Neither one of us has disputed that factor two we probably forgot to put on evidence about. So that one's neutral. So the real issue is what about factors three and four? And the biggest problem with the district court's decision— well, actually, it's twofold— is, one, it placed emphasis on those factors when it shouldn't have. Texas law is clear that with respect to a multi-state policy that the place of performance and the placement of the risk is not relevant. In fact, let me read from the Coachman case, and it says, in the context of an insurance coverage case, the Fifth Circuit considers a state with the most significant relationship to dispute to be a state with context to the insurance dispute, not the underlying lawsuit. And if you read the amended memorandum in order, the district court constantly focuses on the underlying lawsuit. It does not focus on the actual insurance dispute. That is so because once an injured party has been paid, neither he nor his state of residence has any identifiable interest in a dispute between the payer insured and its insurance company. The state's only interest in the resident tort victim's compensation, which has been satisfied. And then if you look at the Reddy-Ice decision, which although it's old law, but old law is still good law, it truly addresses the importance or the lack of importance of the prongs three and four. And the court notes that, moreover, applying Texas law, the courts have adopted the reasoning of Comment A to Section 193 to hold that the location of the insured risk and the location of the subject matter of the contract are neither significant nor determinative in deciding which law to apply to multi-risk policy. And the logic behind that and the rationale behind that is clear. If you don't focus, if you make those factors important, what happens is you have a factual situation in Texas. Texas law applies. The exact same factual situation occurs in Louisiana, and now all of a sudden Louisiana law applies, and you're giving two interpretations to the exact same policy provision. That causes havoc. And the courts try to avoid that, try to read consistency into contracts. And the only way to do that is placing little, if any, importance on factors three and four. And the court, in essence, when you read the opinion, the district court, entirely decided this case based upon factors three and four. And in doing so, didn't even focus on the insurance dispute. One question I have, if we applied Louisiana law, and I don't think this is part of the choice of law analysis, but the Louisiana rule that would treat this as extinguishing the duty to defend, it's based on Louisiana being a direct action state, as I understand it. And so the injured sues the insurance company. If that insurance company pays everything it owes, it's done with. It's extinguished its obligations. But this underlying suit is not a direct action suit. So, how does that fit applying Louisiana law when it's not a direct action lawsuit? First of all, Your Honor, I would respectfully disagree with the basis of that statement that the Gaspard case completely hinges on the direct action nature of Louisiana. That is more a procedural issue that allow, because they can sue the companies directly. But I don't think the Gaspard or the URSI case specifically state, this is because we have direct actions. And, in fact, Indian Harbor doesn't cite any out-of-state cases for the proposition, and we have. Now, I will acknowledge that Wisconsin and Louisiana are direct action states, which have addressed the issue and both concluded that the payment of policy limits in exchange for a covenant not to execute constitutes a relief. I mean, it extinguishes the duty to defend. The other two states, that's not true. Arizona and Illinois are not direct action states, and both those states have concluded under similar policy language or identical that the payment of policy limits in exchange for a covenant not to execute satisfies the, quote, settlement prong of the policy language and therefore extinguishes the duty to defend. And so I think the application is relatively straightforward with respect to the choice of law. If you focus on the proper events as set forth in either 2142, the way the courts have interpreted it, or the factors under the restatement, in fact, on the coverage dispute. And that's, you know, what is the coverage dispute? Is the coverage dispute whether it's any money owed for indemnity or to pay the underlying plaintiff? No. Coverage dispute is, is there a duty to defend? And where is that duty to defend? And where does that duty arise to and in favor of? The insured. So clearly under 2142, the first prong, the benefits of the duty to defend are payable to the insured or additional insurer in this case, both of whom, no dispute, are not Texas residents. And that's the easiest way to knock out 2142. And once this court determined that Louisiana law applies, the resolution is real easy because the parties do not dispute that if Louisiana law applies, then what Dave Gray did was appropriate, exhausts its duty to defend, and then the excess carrier has to drop in. Assuming this court doesn't conclude that Louisiana law applies, it's our position certainly that the trial court got it right with respect to Texas law, and the duty to defend is still exhausted. You know, I love, we all went to law school and were taught stare decisis and cite cases, and it's amazing. Indian Harbor, sorry, wrong direction, would like to rely upon the Continental case. We don't. We rely upon the Judwin case and the Kings Park case, which are factually, and I use the word almost identical because I don't think we could ever create the factual scenario of Judwin or Kings Park with respect to all the insurance carriers involved in everything they did. But in essence, both the— And why not? Because— You admit the Jug cases, it's hard to pin down its applicability to any set of facts. When I said that they were somewhat, they are not identical on all four squares, I was not referring to the events and the actions of the insurance company vis-a-vis the policy payments. It's more the connection between all the insurance companies and the chlorine and how many lawsuits were involved. The problem with Continental is it doesn't involve a covenant not to execute. And that is the distinguishing fact that makes Continental, in the truest sense of the word, irrelevant to this court's decision in this case. Well, and I would more or less read Continental to say the litigation goes on. And if the litigation goes on, continues, your obligation, I mean, under the interpretation of a settlement, if there has been no settlement here, the litigation goes on, your duty goes on by virtue of your own policy terms because your duty ends only when there has been a judgment or a settlement. And if you have not, if there is no settlement here, then your duty has not expired. Justice Kelly, in response to that question, I would respond twofold. First, as Indian Harbor has attempted to argue that Judwin is not applicable because they didn't address the release issue, Continental, for the same argument, is not applicable because it couldn't address whether a covenant not to execute in the sense of the policy constitutes a settlement because there wasn't one. And in fact, in the briefing in Continental, National Union, who was the one that was arguing that there was no exhaustion, in their reply brief states the distinction between Judwin and that case is that the insured never received any benefit from the payment. And that is the key. The key is if the insured receives a benefit, does that then constitute a settlement, which is why Continental isn't applicable. Second of all, if Continental truly overruled Judwin, then it would have to somehow indicate so. It didn't. One, we all know that, theoretically speaking, one panel of the Fifth Circuit can't overrule a decision of another panel. But what do you do with footnote four? I mean, it clearly says Judwin argues on appeal that the insurer is still obligated because there was no release. And then it says we don't consider that because it wasn't raised below. I mean, it's a clear waiver of that argument, which is really the argument that's being made here. How do you get around that? I would direct the Court to the paragraph just before the footnote. And in essence, what that paragraph says is if there are releases necessary, there has to be prejudice. So I don't think you need to get that far because in this case, just like in Judwin, there was no prejudice to the insured by obtaining a covenant not to execute in exchange for the policy limits. Second of all, that argument reads language into the policy that's not there. And that would violate a fundamental tenet of policy or contract construction to read in a term or put in a term that's not in the policy. The phrase says settlement or judgment. It doesn't say release. And we know Gray meant that a release wasn't necessary because if you look at another policy provision, dealing with when the third-party beneficiary can sue Gray, it says there has to be an agreed settlement and a full release. They knew how to put the word in release when they wanted it. But I look at it as a settlement. I mean, in Texas law, and looking at Texas law to define the term settlement, it requires a conclusion of the litigation. And here the litigation, as Continental pointed out in its opinion, continues.  I would respectfully disagree that Texas law requires a conclusion because Texas has never, other than Judwin who says it doesn't and Ken Spartan who says it doesn't, in this context. More importantly, it doesn't say full settlement. It doesn't say what? It doesn't require a full settlement. And there was a resolution of a claim. It was a claim against the Greco's own assets. That's a valuable claim. And that claim was resolved. Indian Harbor doesn't dispute that after the execution, the covenant not to execute, that Greco's assets were at risk. No, it settled the disputed claim against the assets of Greco. And Indian Harbor and Soriano from the Texas Supreme Court acknowledge it doesn't have to be a full settlement, that you can settle a portion of a claim or a portion of the claim. Justice posited the question is could an insurance company settle a punitive damage claim out. Most policies don't cover it, but in theory, certainly, that that could be, and that would be a settlement, although the case would still go on against the insurer. The real issue is. I want to show sort of the opposite of the question that was asked on the other side. If we were to agree with your position, in these high exposure cases, you know, wrongful death cases, cases where there's clearly going to be well beyond the primary insurer's cap of liability, wouldn't this allow the primary insurer just to get out of the duty to defend by making a quick offer along these lines? Arguably, that could occur, but it certainly didn't occur in this case. Gray provided defense for two years. The real issue is, and the practical aspects of these high volume cases is, Rutherford settled on behalf of, sorry, Gray settled on behalf of Rutherford because the plaintiff would take it, because Rutherford actually had a summary judgment grant in its favor, so the plaintiff was willing to take $50,000 for the liability against Rutherford. Gray obviously couldn't get a full release from the plaintiffs. Otherwise, they would have done so. Why couldn't they? Because they wanted more than a million dollars. If Gray can't settle the case, who can settle the case? The excess carriers. Are excess carriers going to voluntarily jump in when they have nothing, no skin in the game? The answer is no. They sit back. We don't have to pay the duty to defend. It's not on our dime, and let's see what happens. And, in fact, that's exactly what happened. This case didn't resolve with mediation. It went on for a year and a half before the excess carriers finally settled. And so what benefit did Gray give to their insured, which is the key? Gray didn't do this to protect themselves. They did it to get a benefit to the insured. One, they got a million-dollar credit, I guess, or $950,000 credit. Two, they finally got the excess carriers involved in the case. Three, it eventually settled. And so if you're talking about does this quell settlements or increase them, it absolutely increases the possibility of settlements. One thing in your favor, I mean just as someone who likes to look at the practicality of things, is that it's counterintuitive that you should be paying, continuing to pay, defense costs. Only if we haven't fulfilled our obligation under the policy. Right, that's what I mean. Once you've settled and you've exhausted all the exhausted policy limits, I mean why doesn't that end obligation of that insurer to get out of the case? I mean that's just intuitive. Just jolly, I wholeheartedly agree with that. I expected you to. And, you know, I wish there was a way to ensure that potentially an insurance company wouldn't act evilly. There's no way we can insure that. Some insurance companies have. They try to just pitch the limits into the court and plead it. I didn't do that. You can't do that. This is the best way to ensure that the insurer is best protected by the primary policy and gets the excess policy involved in the gains to encourage settlement. May I briefly conclude? Sure. Accordingly, the grant insurance company respectfully requests this honorable court affirm the judgment of the district court on the basis of Texas law or, in the alternative, determine that Louisiana law applies, apply Louisiana law and render judgment in favor of grant. Thank you. Mr. Clark. Mr. Salgado. You've got your five minutes. Your Honors, I'd like to start out just by addressing the choice of law. We'll go from there backwards this time. We're going back and forth both ways here. Do you agree if Louisiana law does apply, you lose? Yeah. So, to start out with the Grinnecks being the recipients under 2142, I don't think 2142 is over and done. I think 2142 does apply here. And on that, again, I just want to re-emphasize. Let me ask you this. But if we decide that Louisiana law applies, then we can reverse and render. I would believe so. Under Louisiana law, I'm hesitant to go out and always say that, of course. But under Louisiana law, the law is very – gas-gate agreements are allowed in Louisiana law, in which insurers are essentially cut-paid. So, going on here, though, with the Grinnecks, just to emphasize again, and I understand counsel's point that here the insured is who it's normally payable to. In most insurance policies, maybe that's true, that the insured is properly who is payable here. And the way that works is essentially a legal fiction, right, that the judgment or settlement is technically owed by the defendant, but really then the insurance company steps in and pays it for them. Here a Greco never owed a penny. It never got to that point. There was nothing ever paid to or payable to a Greco, even on a Greco's behalf. Instead, and again, for their argument to work, for Gray's argument to work here, that payment, the Grinnecks, absolutely had to be a payment under the policy. And it was a payment that was made with absolutely no involvement by a Greco and never passed through a Greco. Instead, it was directly contracted, under Texas law, by the way, in an agreement under Texas law, directly between Gray and the Grinnecks, bringing them into that relationship and making the policy payable to them. So to me, that is satisfied. I also want to address ReadyIce. In the ReadyIce case, in that, the situation was different. ReadyIce is a nationwide company. Essentially, they had a physical presence in Texas that would give them jurisdiction in a jurisdictionary family, personal jurisdiction in general contacts and whatnot. But the insurance policy itself was a nationwide coverage policy. That's what we were looking at. It was multiple across the whole country, nationwide coverage. There, all the factors do kill a little bit more differently, as counsel was saying. That is not the situation here. Gichard does not do nationwide work. There's nothing happening nationwide. We're talking about Louisiana and Texas. What about his argument that your position would mean the same exact policy could be you'd apply Texas law to one incident in 2019, and then two years later, another incident might happen in another location, and you'd apply to the same policy a different state's law? Well, I think if you had – that's one of the problems with a nationwide policy, for example. If you're covering locations all across the country, then, yeah, you have to change that analysis here. But here we really are looking at Louisiana and Texas. And, again, in some instances, could it be Louisiana? Certainly. In some instances, Louisiana might apply. But that's not this. This was every event, every aspect of this was centered in Texas. Once the contract was formed and off it went, every incident that we're dealing with here today is Texas-centered. This is not a Louisiana controversy. And, again, even the subsequent agreements that were made with Rutherford Oil and with the Brinics or for Rutherford Oil with the Brinics and for Greco with the Brinics, those agreements were under Texas law. So, again, I would say the gravity of this case proves entirely, even if we get past 2142, which, again, I would submit we shouldn't because, truthfully, 2142 does apply here. And typically under the 2142 analysis, it comes out saying Texas law. It's not to be overread. It's not to give extraterritorial reach. But once you get into that analysis, especially where the payments are being made to Texas citizens, you typically come out of that analysis with Texas law. This would be an anomaly to go a different direction. Now I do want to turn, with 43 seconds I have left, very briefly to touch on the coverage issues. And the agreement does not say a benefit to. It does not say that our duty to defend is satisfied or extinguished when we have given a benefit to the insured or paid out for the benefit of the insured or paid out something like unto or similar to a settlement. It says specifically a settlement. That is there for a reason. That is very specific. And, again, Texas law makes clear that a settlement is the elimination of a claim. We spoke—Counselor talked about the assets being protected, that now the assets of a record are protected. The assets being at risk is not a contingent aspect of there being a duty to defend. In fact, on page 601 of the Record on Appeals, it covers what happens in insolvency and bankruptcy and makes clear that even if the insured is insolvent, a duty to defend and all the obligations still apply. All right. I think we have the argument, and we appreciate it from both sides. We'll call the last case for today, United States.